UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABDUL ALIM AMIN ABDULLAH, | Civ. No. 21-10810 (MAS)(JBD) |
| Plaintiff, | |
| | MEMORANDUM ORDER |
| v. | |
| MELVIN MERRIEL, | |
| Defendant. | |

This matter comes before the Court by way of a motion filed by *pro se* plaintiff Abdul Alim Amin Abdullah for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1). [Dkt. 32.] For the reasons set forth below, Abdullah's motion is denied without prejudice.

## I.  BACKGROUND AND PROCEDURAL HISTORY

On May 6, 2021, Abdullah, who is currently incarcerated at New Jersey State Prison, filed a complaint, along with an application to proceed *in forma pauperis*, against defendant Melvin Merriel, who is a correctional officer at the prison. Abdullah alleged that Merriel assaulted him in the prison's medical clinic in May 2019. Abdullah asserted a claim under 42 U.S.C. § 1983 alleging a violation of his constitutional right to be free from "Cruel and Unusual Punishment" while a prisoner in the care and custody of the New Jersey Department of Corrections. [Dkt. 1.]

This Court granted Abdullah's application to proceed *in forma pauperis* on May 11, 2021 and approved his complaint for filing after screening it pursuant to 28 U.S.C. § 1915(e)(2)(B). *See* [Dkts. 2, 23]. Abdullah filed an amended complaint

on June 8, 2022, after which he filed a motion for default judgment, which was denied because Abdullah had not properly served Merriel with the amended complaint. *See* [Dkts. 10, 23]. At the Court's direction, the Clerk refiled the amended complaint on November 28, 2023. *Id.* The summons was returned executed in January 2024 and Merriel filed his answer to the amended complaint on March 8, 2024. [Dkts. 26, 31.]

Abdullah filed the present motion for *pro bono* counsel on March 7, 2024, which Merriel opposes. [Dkts. 32, 33.]

II. **DISCUSSION**

Although there is no constitutional right to counsel for litigants in a civil matter, 28 U.S.C. § 1915(e)(1) provides the Court with the discretion to "request an attorney to represent any person unable to afford counsel." *See Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citations omitted). However, "[b]efore the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (citations omitted). Where the Court has determined, as a threshold matter, "that the plaintiff's claim has arguable merit in fact and law," the Court then must consider six non-exclusive factors (the "*Tabron* factors") to determine whether a matter warrants the appointment of *pro bono* counsel. *Id.*; *see also Parham*, 126 F.3d at 457. The *Tabron* factors are: (1) the ability of the plaintiff "to present his or her case," and, where the plaintiff is a prisoner, the "restraints placed upon him or her by confinement"; (2) the difficulty and complexity of the legal issues in the matter; (3) the amount of factual investigation required and the

plaintiff's ability to pursue that factual investigation, and whether the claims will require extensive discovery and compliance with complex discovery rules; (4) whether the issues will rely heavily on testimony and thus turn on credibility determinations; (5) whether expert witness testimony will be required; and (6) whether the plaintiff can attain and afford to retain counsel. *Tabron*, 6 F.3d at 156; *Parham*, 126 F.3d at 457.

The Court must weigh these factors against the extreme value of a *pro bono* lawyer's time, always mindful that "[v]olunteer lawyer time is a precious commodity . . . . Because this resource is available in only limited quantity, every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." *Tabron*, 6 F.3d at 157 (second alteration in original) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989)). Thus, "appointment of counsel remains a matter of discretion . . . and the determination must be made on a case-by-case basis." *Id.* at 157-58.

Here, as a threshold matter, the fact that the Court permitted Abdullah's complaint to proceed after screening it pursuant to 28 U.S.C. § 1915(e)(2)(B) is an indication that his claims may have "some merit in fact and law." *See Bolling v. Davis*, Civ. No. 19-18545 (RK), 2023 WL 4551425, at *3 (D.N.J. July 14, 2023) (noting that "Plaintiff's . . . claims . . . survived screening and, thus, have arguable merit"); *see also Williams v. Hayman*, 488 F. Supp. 2d 446, 449-50 (D.N.J. 2007) (stating that a case screened by the court may have merit sufficient for appointment of counsel). Thus, the Court will proceed to weigh the six *Tabron* factors.

The first *Tabron* factor—the plaintiff's ability to present his own case—requires the Court to "consider the plaintiff's education, literacy, prior work experience, and prior litigation experience," as well as whether the plaintiff is able to understand English. *Tabron*, 6 F.3d at 156. Abdullah asserts that he is unable to represent himself because of his "mental impairments," "na[i]vete," and "litigation inexperience/ignorance." [Dkt. 32-3] ¶¶ 8-9. He asserts that the complaint and appointment of counsel motion were drafted by an inmate paralegal who has since withdrawn his assistance, and that he has not been able to find other inmates to help him. [Dkt. 32-3] ¶¶ 6-8.

However, Abdullah provides no factual basis in support of his assertion of "mental impairments." And although he asserts that a paralegal drafted the complaint and appointment of counsel motion, Abdullah has filed multiple documents other than the complaint and the present motion, and it appears from those filings that he is able to read, write, understand English, and to understand the legal process. *See* [Dkt. 10] (amended complaint); [Dkt. 9] (letter to the Court showing good cause not to dismiss the action, which resulted in the Court vacating an order for dismissal); [Dkt. 12] (motion for extension of time to file request for entry of default); [Dkt. 14] (a request for entry of default, which was granted); [Dkt. 16] (letter requesting a 60-day extension to respond to the Court's notice of call for dismissal); [Dkt. 18] (declaration of good cause in support of case remaining open); [Dkt. 19] (a motion for default judgment, which was denied for improper service of the amended complaint); and [Dkts. 21, 34, 37] (letters from Abdullah to the Court requesting updates on his case). Overall, the filings on the docket

4

indicate that Abdullah is competent, literate, and generally understands the legal process. *See Burt v. Hicks*, Civ. No. 20-19459 (NLH), 2021 WL 3207729, at *3 (D.N.J. July 29, 2021).

Where, as here, the plaintiff is incarcerated, the Court should also consider the restraints placed on him by his imprisonment, as well as whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone, and computer. *Id.* at *2 (citing *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002); *Parham*, 126 F.3d at 459). Given Abdullah's filings so far, the Court does not find that Abdullah's ability to present his case has been impeded because of the particular circumstances of his incarceration. *See Lockett v. Derose*, Civ. No. 08-1643 (ARC), 2009 WL 1917071, at *1 (M.D. Pa. July 1, 2009) (stating that "[t]o hold incarceration, itself, to be a basis to appoint counsel would essentially dispose of the need to examine the individual factors of each inmate's case under *Tabron*"). This factor thus weighs against appointing Abdullah counsel.

The second *Tabron* factor requires the Court to consider "the difficulty of the particular legal issues," especially where the law is not clear. *Tabron*, 6 F.3d at 156. Here, Abdullah's claim primarily turns on allegations that Merriel assaulted him. Since discovery has not yet commenced, it is too early in the litigation to determine whether litigating this issue will indeed be complex. Thus, this factor weighs against the appointment of *pro bono* counsel at this time. *See Jenkins v. D'Amico*, Civ. No. 06-2027 (JAP), 2006 WL 2465414, at *1-2 (D.N.J. Aug. 22, 2006) (noting, where the plaintiffs' complaint was recently filed, that "the factual and legal issues 'have not been tested or developed by the general course of litigation,

5

making [a number of factors] . . . particularly difficult to evaluate,'" and determining that the plaintiffs had not demonstrated the complexity of legal issues, or most of the other *Tabron* factors, at that early stage of the proceedings) (first alteration in original) (quoting *Chatterjee v. Philadelphia Federation of Teachers*, 2000 WL 1022979, at *1 (E.D. Pa. July 18, 2000)).

"As to the third *Tabron* factor, the Third Circuit has stated that where a person is confined to prison and that confinement limits his ability to conduct discovery, great weight will be given to the decision to appoint counsel." *Nadal v. Christie*, Civ. No. 13-5447 (RBK), 2013 WL 6331058, at *3 (D.N.J. Dec. 4, 2013) (citing *Montgomery*, 294 F.3d at 503; *Tabron*, 6 F.3d at 156). Here, Abdullah argues that he requires *pro bono* counsel because he believes his matter "involves extraordinary circumstances," which include his "need to acquire, view, handle, and present pivotal video recordings," and his "need for attorney-dependent protective discovery measures to secure the release of not only the video recordings but also other security-compromising evidence." [Dkt. 32-3] ¶ 9. But because this matter is still at the pleading stage and discovery has not yet begun, it is too early to know whether Abdullah's incarceration will impact his ability to conduct discovery. *See Nadal*, 2013 WL 6331058, at *3 (stating, that unless and until plaintiff was faced with issues that impeded his ability to conduct discovery, "he cannot show that this factor weighs in favor of requesting *pro bono* counsel"). Accordingly, this factor does not weigh in favor of appointing counsel at this time.

Likewise, it is too early in the proceedings to determine the fourth *Tabron* factor, which "will only weigh in favor of the appointment of counsel where the trial

is expected to be 'solely a swearing contest.'" *Burt*, 2021 WL 3207729, at *4 (quoting *Montgomery*, 294 F.3d at 505). Here, it appears that there may have been third-party witnesses to the alleged events, and there may be video evidence as well, [Dkt. 10] ¶¶ 8-18, so the Court cannot determine at this stage whether the case presents only a swearing contest. *See id.* at *4 (determining the fourth factor to be neutral because the court could not answer whether the case would turn on credibility at that time). Thus, this factor does not weigh in favor of appointing counsel at this time.

Abdullah also asserts that he will "need . . . an expert to prove [his] injuries." [Dkt. 32-3] ¶ 9. The Court cannot determine at this early stage whether that is so, which renders the fifth *Tabron* factor neutral as well.

Finally, as for the sixth *Tabron* factor—whether the plaintiff can attain and afford to retain counsel—Abdullah asserts that after the inmate paralegal who drafted his complaint withdrew his assistance, he has not been able to find any other inmates to help him. Combined with the fact that Abdullah is proceeding *in forma pauperis*, this does indicate he may not be able to attain and/or afford to retain a lawyer. Thus, this factor weighs slightly in favor of appointing *pro bono* counsel.

Balancing the *Tabron* factors together, there is only one factor that weighs (slightly) in favor of appointing *pro bono* counsel at this time, and the others either weigh against appointing counsel or are neutral. On the whole, the factors do not warrant appointing counsel at this time. The Court will therefore deny Abdullah's present motion for the appointment of *pro bono* counsel without prejudice.

The Court notes that *pro bono* counsel may be appointed at any stage of the litigation. *Tabron*, 6 F.3d at 156. Should any of the above facts or circumstances change the *Tabron* analysis as discovery and the litigation of this matter progresses, Abdullah may file another motion for the appointment of *pro bono* counsel, explaining with specificity why the *Tabron* factors weigh in favor of appointing *pro bono* counsel at that time.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS** on this 20th day of September, 2024,

**ORDERED** that Abdullah's motion for the appointment of *pro bono* counsel [Dkt. 32] is DENIED without prejudice; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Order on Abdullah by regular U.S. mail.

_____
J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE